BANK OF ITALY *v.* WELSH.

1. GARNISHMENT—STATUTORY PROCEEDING.
   Garnishment proceedings are special and statutory, giving a harsh and peculiar remedy, requiring the provisions of the statute to be strictly followed.

2. SAME—DISCLOSURE BEFORE JURISDICTION OBTAINED OF NO FORCE.
   A disclosure in garnishment before jurisdiction in the principal case has been obtained is of no force, even though the principal defendant subsequently appear.

3. SAME—DISMISSAL—JURISDICTION.
   Garnishment proceedings were properly dismissed where the statutory period expired without service upon the principal defendant, and whether the principal case survived resulting later in a valid judgment against the principal defendant is immaterial.

Error to Wayne; Webster (Clyde I.), J. Submitted January 21, 1921. (Docket No. 58.) Decided March 30, 1921.

Garnishment proceedings by the Bank of Italy against Charles F. Welsh and others, garnishee defendants of E. G. Rideout and another. From orders denying plaintiff's motion for summary judgment, and granting defendants' motion to quash, plaintiff brings error. Affirmed.

*Rood & Visscher,* for appellant.

*Herbert J. Newman,* for appellees.

STEERE, C. J. Appellant seeks reversal of two orders of the Wayne county circuit court, made on motions argued and submitted together, denying plaintiff's motion for summary judgment against the above-named garnishee defendants and granting their mo-

tions for an order to quash the writ of garnishment, releasing them from all liability thereunder. The principal action to which the involved garnishment proceedings litigated here are auxiliary was commenced in the circuit court of Wayne county by summons issued January 8, 1920, and made returnable April 6, 1920. This summons was not served, nor returned until May 28, 1920, on which date the sheriff of Wayne county made return of nonservice in the usual form because of inability to find the defendant after diligent search and inquiry. No *alias* summons was ever issued in the case.

Plaintiff is a foreign corporation, organized under the laws of California. Elbridge G. Rideout, the principal defendant, was also a nonresident of this State. He died in the city of New York on January 28, 1920, proceedings to administer his estate being thereafter taken in the State of New Jersey. His nonresidence when action was begun was known to plaintiff's counsel who made and filed an affidavit of garnishment January 10, 1920, concluding, "and the affiant further says that the said E. G. Rideout is a nonresident of the State of Michigan," a provision not required by the general garnishment statute and evidently inserted to bring the proceedings under section 13150 of the Compiled Laws of 1915, relating to the garnishment proceedings where the principal defendant is a nonresident. A declaration in assumpsit was filed on January 9, 1920, with an attached copy of a note for $900 given by Rideout to plaintiff, dated Los Angeles, California, July 10, 1914, upon which $400 was credited, with affidavit of plaintiff's counsel, dated January 9, 1920, stating that the "annexed account" was a true statement between the parties, the indebtedness of defendant to plaintiff being then $703.50 as near as he could estimate the same, etc. Pursuant to the affidavit therefor, a writ of garnishment was

issued and filed on January 13, 1920, with a return of service on the above-named garnishee defendants.

On February 28, 1920, they filed disclosure of an indebtedness of $1,962.49 to the principal defendant, and an affidavit of Gaylord N. Bebout, stating that he together with the other garnishee defendants Welsh and Kahn constituted a firm of attorneys in Detroit, and as such had represented the interests of said defendant Rideout in said city; that affiant was informed and believed said Rideout had died in a hospital in the city of New York on January 28, 1920, and no service in this cause had ever been made on him within the State of Michigan during his lifetime.

On March 27, 1920, they filed an amended disclosure denying indebtedness, setting out in apparent explanation of the former disclosure, that when served with said writ they were acting as agents and attorneys for the principal defendant, and as such custodians of his funds were privileged from disclosing any facts in relation thereto coming to their knowledge in that capacity and, otherwise than in such capacity, they had no property or money of said defendant in their possession or under their control. No authority is cited to sustain this doubtful feature of their defense. In 2 Wade on Attachments and Garnishments, § 349, it is said with citation of decisions:

"The case of an attorney who has collected money for the defendant, and has it in possession subject to the latter's right of action therefor on demand and failure to pay, may be held as garnishee if properly served. But this is for the reason that he occupies the position of debtor to the defendant in attachment."

Nothing further was done in the case until April 6, 1920, when plaintiff filed and served a demand for examination of the garnishee defendants before a circuit court commissioner on April 9, 1920. On that day they did not appear for such examination, of

which fact the commissioner made return on April 10, 1920, stating that "said garnishees suffered default." On the same day plaintiff's counsel entered their default and served on them notice thereof.

On April 13, 1920, Douglas A. Graham, an employee connected with the office of plaintiff's counsel, filed an "appearance of defendant and notice" as follows:

"Now comes Douglas A. Graham, administrator of the estate of Elbridge G. Rideout, who died after the commencement of the above entitled cause, and in behalf of the estate of the said Elbridge G. Rideout, demands a trial in the matter set forth in the plaintiff's declaration.

"DOUGLAS A. GRAHAM,
"837 Dime Bank Bldg.,
"Detroit, Michigan."

On May 7, 1920, he filed another "appearance of defendant and notice" as follows:

"Now comes Douglas A. Graham, administrator of the estate of Elbridge G. Rideout, duly appointed by the probate court of Wayne county, Michigan, and enters appearance in the said cause, for and in behalf of the said defendant, and shows to the court that the said Elbridge G. Rideout died at the city of New York on the 28th day of January, A. D. 1920.

"DOUGLAS A. GRAHAM,
"Administrator of the estate of Elbridge G. Rideout."

On May 10, 1920, entry of judgment was filed and journal entry made as follows:

"Entry of Judgment (filed May 10, 1920). At a session of the circuit court held in the county building of Wayne county the 7th day of May, A. D. 1920. Present: The Honorable Adolph F. Marschner, circuit judge.

"Upon reading the declaration in said cause, and upon taking proofs in open court, the said defendant having appeared and pleaded, by his administrator, Douglas A. Graham, it is hereby

213—Mich.—19.

"Ordered that judgment be entered against the said defendant in the amount of ($703.33) seven hundred and three dollars and thirty-three cents damages, plus twenty-two dollars ($22.00) costs, and that the plaintiff have execution therefor.

"ADOLPH F. MARSCHNER,
"Circuit Judge."

"Journal Entry (Filed May 10, 1920). Upon reading the declaration in said cause, and upon taking proofs in open court, the said defendant having appeared and pleaded by his administrator, Douglas A. Graham, it is hereby ordered that judgment be entered against the said defendant in the amount of seven hundred three ($703.33) dollars and thirty-three cents damages, plus twenty-two ($22.00) dollars costs, and that plaintiff have execution therefor.

(Signed at the end of the day's entries.)
"ADOLPH F. MARSCHNER,
"Presiding Judge."

The "said defendant" against whom judgment ran was, as stated in the *præcipe,* summons, declaration and all other proceedings in the case so far as the printed record discloses, E. G. Rideout, who died unserved with process over three months before the judgment was rendered against him.

On May 18, 1920, affidavit of regularity was filed in the garnishment proceedings, and a motion for judgment against the garnishee defendants was filed with notice for hearing said motion on May 22, 1920, duly served upon them. On May 22, 1920, they filed a motion for dismissal of the garnishment and their release as garnishees, followed by a "motion to quash suit," filed May 26, 1920. After hearing the motions, argued together, the court made and entered orders on July 6, 1920, denying plaintiff's motion for judgment and granting defendants' holding that the ancillary proceeding in garnishment had abated because no service of process or notice was made upon the principal defendant during his lifetime, nor upon his

estate, within 60 days from the time of service of process on the garnishee defendants in compliance with section 13150, 3 Comp. Laws 1915, as construed in *Axtell* v. *Gibbs*, 52 Mich. 640, supported by *Iron Cliffs Co.* v. *Lahais*, 52 Mich. 394.

Section 13150, relating to "proceedings against nonresidents," has been upon our statute books since 1861. So far as material here it provides:

"If the plaintiff, in addition to the allegations hereinbefore required to be contained in the affidavit for the writ of garnishment, shall set forth in such affidavit that the principal defendant is a nonresident of the county or State where the suit is commenced, * * * the principal writ or declaration and affidavit may be filed of the day of issue, and the writ of garnishment may be served as in ordinary cases; and within sixty days after such service the plaintiff shall cause to be delivered to such nonresident defendant * * * a true copy of the principal writ or declaration, affidavit and writ of garnishment with return of service thereon, and with a written or printed notice attached," etc.

*Iron Cliffs Co.* v. *Lahais, supra,* states the often repeated rule in this jurisdiction that garnishment proceedings are special and statutory, giving a harsh and peculiar remedy requiring the provisions of the statute to be strictly followed, and holds that a disclosure in garnishment before jurisdiction in the principal case has been obtained is of no force, even though the principal defendant subsequently appear. It is argued for plaintiff that the *Iron Cliffs Case* is not analogous nor controlling here, because it involved the validity of proceedings in justice's court. We are unable to recognize the force of this distinction to the extent claimed; but passing to the *Axtell Case, supra,* which involved ancillary garnishment proceedings in a case begun against a nonresident in circuit court under the same statute as here, we find that in the principal case,

separately disposed of by an immediately preceding opinion, it was held that under the facts an *alias* summons could be treated as a new writ for a new suit if the first suit went down, and the process was not void as against the principal defendant because the return to the original summons did not furnish a proper basis for it, and, referring to the principal case, it was said in the opinion relative to the dependent garnishment case:

"The circuit judge was quite right in dismissing the garnishment proceeding when the plaintiff had failed to secure service upon the principal defendant within the statutory period. *Noble* v. *Bourke*, 44 Mich. 194. Whatever the plaintiff might do to keep the suit against the principal defendant alive for the purpose of a personal judgment, did not concern the garnishee; the proceeding against him was purely statutory, and his hands were tied and his action restrained for the time only that the statute provided for such service on the principal debtor as was necessary to enable the plaintiff to reach the credits and effects in the hands of the garnishee."

Plaintiff's counsel point out as an adequate distinction that in the *Axtell Case* no judgment had been obtained against the principal defendant when the garnishment proceedings were quashed, and it was not known there ever would be, while in the instant case the order of dismissal was made after judgment, and in that connection say:

"The decision in *Axtell* v. *Gibbs* and *Iron Cliffs Co.* v. *Lahais* were made at a time when garnishment proceedings in general were being given a strict construction, entirely different from the construction that has been given for the past twenty-five years."

The view expressed as to the nature of the remedy and rules of construction applied in those cases have since then been recognized as the law in this State from time to time as occasion arose, even as late as the

decision in *W. H. Warner Coal Co.* v. *Nelson,* 204 Mich. 317, wherein it is said:

"In considering the question here involved we must take into consideration that the proceeding in garnishment is special and statutory, affording a harsh remedy, and that one pursuing it must bring himself within the statute and follow its mandate"; with citation of cases, including *Iron Cliffs Co.* v. *Lahais, supra.*

*Vide,* also, Michigan cases cited to the concluding sentence of section 8 in Rood on Garnishments.

Whether the principal case survived, and Graham's appearance as administrator after the 60 days' statutory time for service had expired resulted in a valid judgment against the deceased "said defendant" or his estate did not, as held in the *Axtell Case,* concern the garnishees. When the statutory period expired without service their hands were no longer tied. During the last two-thirds of that period death rendered it impossible for the principal defendant to appear or be served. Within the statutory period no appearance was entered by or service made upon any representative of the estate.

The judgment is affirmed.

FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. MOORE and BROOKE, JJ., did not sit.